### WARNER v. SCHONER et al.
### No. 8435.
Circuit Court of Appeals, Ninth Circuit.
June 14, 1937.

Stern & Stern, Bogle, Bogle & Gates, and Warren Brown, all of Seattle, Wash., for appellant.

Henry Elliott, Jr., J. Speed Smith, and C. A. Schneider, all of Seattle, Wash., for appellees.

Before WILBUR, DENMAN, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Appellant, as a trustee in bankruptcy, has appealed from an order confirming an order of the referee which overruled appellant's objections to claims filed against the bankrupt estate by appellees.

The stipulation of facts presents a question of interpretation of the by-laws of the bankrupt corporation.

The bankrupt, Puget Sound Quality Stores, was incorporated on the 10th day of March, 1930, as a co-operative association under the laws of the state of Washington for the purpose of dealing in groceries and merchandise upon a nonprofit co-operative basis for the benefit of its members or shareholders. The capital stock consisted of $500 divided into 500 shares of the par value of $1 per share.

The by-laws, adopted at the first meeting of incorporators and trustees on March 10, 1930, and approved by all of the member shareholders, provided in article XV, as follows:

"Sec. 1. One percent (1%) shall be added to all statements for the purpose of creating a credit reserve fund. Said one percent (1%) shall be credited to each member's reserve fund account and shall be returnable with interest upon the member ceasing to be a member of the Association; less, however, a pro rata percentage of loss sustained by the Association on account of losses or credit extended to members of the Association.

"Sec. 2. The member's surplus account shall be a guaranty of his account with the Association, it being understood that said reserve fund shall be used to guarantee the accounts of all members with the Association who receive credit.

"Sec. 3. Statements shall be issued to members on the 1st and 15th of each month for goods purchased through or from the Association. The statement of the first of the month shall be delinquent on the 12th of the month, and the statement of the 15th of the month shall become delinquent on the 25th. Credit shall be refused to any member who shall have two such statements unpaid and such credit shall not be renewed until the delinquent accounts of the member are paid. All delinquent accounts will draw penalties of one percent (1%) per week."

Upon its incorporation, the bankrupt engaged in the business for which it was or-

ganized and continued the same until the appointment of a state court receiver in July, 1934. On September 20, 1934, an involuntary petition in bankruptcy was filed in the court below, and on the 4th day of October, 1934, Puget Sound Quality Stores was adjudicated a bankrupt. In the regular course of the bankrupt's business carried on prior to the appointment of the state court receiver, it purchased merchandise in quantity from manufacturers and jobbers and in turn sold it out in lesser quantities to its member shareholders who were engaged in the retail grocery business.

Prior to May 30, 1931, but not thereafter, the bankrupt added for the credit reserve fund, 1 per cent. to the amount of each statement for each bill of merchandise sold by it to its members. The amount of said 1 per cent. so contributed by each member was credited to his individual credit reserve account in the books of the company.

The officers of the bankrupt did not represent to manufacturers that in case of an operating deficit the company could reach in and take out of the credit reserve fund money to pay said manufacturers. No present creditor of the bankrupt extended credit to it on the basis of the credit reserve fund being or having been available for the general debts of the corporation or upon the basis of the corporation being free from liability to the member shareholders for the return of the funds contributed by them to the credit reserve fund.

The assets of the bankrupt, which the trustee has completely reduced to cash, are insufficient to pay in full the general claims of creditors whose claims have been filed and allowed, other than and exclusive of the claims of the credit reserve claimants whose claims have been filed herein.

Each claimant whose claim is now under consideration (and other claimants similarly situated) is a member of Puget Sound Quality Stores, holding one share of stock, and has paid into the credit reserve fund, under the provisions of the by-laws above quoted, in the course of business as aforesaid, prior to May 30, 1931, and has been credited therefor in his individual reserve fund account, the following respective amounts: R. E. Schoner $536.94; C. P. Ainsworth $660.91; J. E. Roullard $587.61; O. M. Freeborg, $558.32; for which amounts each of said claimants has filed a general claim against the estate of the bankrupt, and to which claims the trustee has filed objections.

The referee overruled the trustee's objections and allowed the claims. On petition to review, the lower court confirmed the order of the referee. This appeal was allowed by the lower court under 11 U.S.C. A. § 48.

There is no principle of law involved, but purely a construction of the by-laws. Under article XV, section 1, the member's reserve fund was returnable to him, less "a pro rata percentage of loss sustained by the Association on account of losses or credit extended to members of the Association." Appellant contends the word "losses" refers to all losses, including operating losses. Appellee contends such word means only losses arising from the extension of credit to members.

It is quite apparent that the word might mean either of these constructions. We believe, however, that section 2 of the article resolves the doubt. That section states for what the reserve fund shall be used. It authorizes use of the fund only for losses arising from the extension of credit to members of the association, but does not authorize use of the fund for any other losses. By adopting the construction placed on the word by the lower court, the meaning of "losses" coincides with the purpose for which the funds may be used. We therefore hold that the losses referred to in section 1 are those arising from the extension of credit by the association to its members.

Affirmed.